# SULLIVAN & CROMWELL LLP



**NORTON ROSE FULBRIGHT**

June 24, 2026

Via ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

> Re:    *United States* v. *Gautam Adani et al.*, No. 24-cr-00433 (E.D.N.Y.);
> *SEC* v. *Adani et al.*, No. 24-cv-08080 (E.D.N.Y.)

Dear Judge Garaufis:

On behalf of Gautam Adani, Sagar Adani, and Vneet Jaain, we write in connection with the pending resolutions of the above-captioned cases.  We respectfully ask the Court to grant the Department of Justice's motion to dismiss the Indictment with prejudice and the Securities and Exchange Commission's motion to enter the pending Consent Judgments resolving its claims.  For the Court's convenience and consideration, we set forth below some background regarding the allegations and pending resolutions in each case, along with the law governing the standard of review for such motions.

On November 20, 2024, the DOJ unsealed its Indictment (DOJ Action, Dkt. No. 1) against Gautam Adani, Sagar Adani, and Vneet Jaain (the "Adani DOJ Defendants"), among others.  In its Indictment, the DOJ alleged that the Adani DOJ Defendants conspired to and did commit securities fraud and conspired to commit wire fraud in connection with 2021 and 2024 bond offerings and 2021 and 2023 syndicated bank loans.  That same day, the SEC filed its Complaint (SEC Action, Dkt. No. 1) against Gautam Adani and Sagar Adani (the "Adani SEC Defendants") alleging that the Adani SEC Defendants violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder by approving or making false or misleading statements in connection with the 2021 bond offering.

The Honorable Nicholas G. Garaufis                                                    -2-

The Indictment and Complaint do not allege any U.S. bribery offenses against the Adani DOJ Defendants.  They also do not allege any investor losses arising from any of the four transactions.  Both the 2021 and 2024 bond offerings were issued pursuant to Regulation S and Rule 144A, promulgated under the Securities Act of 1933.  *See* 17 C.F.R. §§ 230.144A, 230.901-230.905.  As relevant here, under Rule 144A, those offerings were available only to Qualified Institutional Buyers ("QIBs"), which are large and sophisticated institutions that own or invest more than $100 million in securities.  *Id.* § 230.144A(a)(1).  The 2021 bond offering has matured, and all interest payments have been made.  The 2024 bond offering has missed no interest payments.  The 2021 loan has been repaid in full, and the 2023 loan is not in default.

### 1.      Pending Dismissal in the DOJ Action

On May 18, 2026, the DOJ filed a motion under Federal Rule of Criminal Procedure 48(a) seeking dismissal of the Indictment with prejudice.  DOJ Action, Dkt. No. 23.  In its motion, the DOJ stated that it "has reviewed this case and has decided, in its prosecutorial discretion, not to devote further resources to these criminal charges against individual defendants."  *Id.*[1]

Rule 48(a) authorizes the DOJ, "with leave of court," to "dismiss an indictment."  As Judge Chen recently recognized when granting the DOJ's motion to dismiss in the FIFA case, the "leave of court" requirement confers on the Court "very little authority" to deny the DOJ's motion under Rule 48(a).  *United States* v. *Webb*, No. 15-cr-00252, May 27, 2026 Arg. Tr. 10:23 (E.D.N.Y.)[2]; *see United States* v. *Blaszczak*, 56 F.4th

---

[1]      Also on May 18, Adani Enterprises Limited ("AEL") agreed with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") to settle for $275 million its potential civil liability related to apparent violations of OFAC's Iran sanctions. OFAC, Settlement Agreement at 4 (May 18, 2026), https://ofac.treasury.gov/ media/935636/download?inline.  The Settlement Agreement stated that "AEL extensively cooperated with OFAC's investigation, including by proactively disclosing the findings of its investigation, producing large volumes of documentation, meaningfully answering all the agency's questions, and promptly resolving its potential liability."  *Id.*  AEL produced almost 30,000 pages to OFAC.  Sullivan & Cromwell lawyers have spent thousands of hours working on the DOJ, SEC, and OFAC matters.

[2]      Orders of dismissal were entered on June 5, 2026.  *United States* v. *Webb*, No. 15-cr-00252 (E.D.N.Y. June 5, 2026), Dkt. Nos. 2102, 2103.

The Honorable Nicholas G. Garaufis                                            -3-

230, 240 (2d Cir. 2022) ("The Executive remains . . . presumptively the best judge of whether a pending prosecution should be terminated.  The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest.") (quotation omitted); *see also United States* v. *Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016) ("[T]he 'leave of court' authority gives no power to a district court to deny a prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority.").

Similarly, as Judge Ho recently explained, a district court's decision to grant a Rule 48(a) motion does not amount to an "opinion as to the merits of the case or whether the prosecution . . . 'should' move forward," and the district court "has no authority to require that [the prosecution] continue." *United States* v. *Adams*, 777 F. Supp. 3d 185, 237 (S.D.N.Y. 2025).  The DOJ "may elect to eschew or discontinue prosecutions for any of a number of reasons," and "[r]arely will the judiciary overrule the Executive Branch's exercise of these prosecutorial decisions." *Blaszczak*, 56 F.4th at 238.  Because a district court's discretion under Rule 48(a) "involves the constitutional issue of the Separation of Powers Doctrine," the DOJ remains "presumptively the best judge of whether a pending prosecution should be terminated." *Id.* at 240 (quotation omitted).

As to the scope of the Court's limited discretion, "the primary purpose of [Rule 48(a)] is protection of a defendant's rights." *United States* v. *Salinas*, 693 F.2d 348, 351 (5th Cir. 1982).  The Supreme Court has recognized that "[t]he principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi* v. *United States*, 434 U.S. 22, 29 n.15 (1977) (citation omitted); *see, e.g.*, *Salinas*, 693 F.2d at 353 (finding that the Government's "true reason for dismissal was in derogation of defendant Salinas' rights"). For this reason, "it appears that no appellate court has upheld a denial of a motion to dismiss, *where the defendant has consented to the dismissal*, grounded on a finding of 'bad faith' or action 'contrary to the public interest' alone." *United States* v. *KPMG LLP*, 2007 WL 541956, at *6 (S.D.N.Y. Feb. 15, 2007) (emphasis added) (citation omitted).  Here, the DOJ has moved to dismiss the Indictment "with prejudice" and with consent of the Adani DOJ Defendants, and so there is no prospect of prosecutorial harassment.  *See* DOJ Action, Dkt. No. 23.

The DOJ's decision reflects its careful consideration of the Indictment's legal and factual weaknesses.  The DOJ seeks to dismiss the Indictment after months of

The Honorable Nicholas G. Garaufis                                                    -4-

detailed and extensive communications and meetings with counsel for the Adani DOJ Defendants regarding the law and facts governing this case—including numerous written submissions and oral presentations by counsel, the production of documents, and the consideration of reports prepared by prominent experts in the United States and India. Those submissions included: (i) a 118-page letter submission to DOJ, accompanied by a nine-page cover letter and approximately 200 pages of expert reports by a securities law professor at Harvard Law School, a former SEC Commissioner and Acting Chairman, a former Chief Justice of India, and a former Chairperson of the Central Electricity Authority in India and Member of the Central Electricity Regulatory Commission, (ii) a 12-page supplemental submission, (iii) a 95-page slide deck presented in February 2026, and (iv) an additional 35-page slide deck presented in April 2026. In total, the Adani DOJ Defendants submitted nearly 500 pages of facts, law, expert testimony, and argument to the DOJ between February 3, 2026 and April 17, 2026. As explained in those submissions, the Indictment suffers from four primary flaws.

*First*, the predominantly foreign aspects of this case place it beyond the reach of U.S. law because there was no relevant domestic transaction as required by *Morrison* v. *National Australia Bank Ltd.*, 561 U.S. 247, 267 (2010). The underlying transactions in this case were conducted solely by non-U.S.-based issuers and lenders to fund renewable energy projects in India. All offering documents in connection with the 2021 and 2024 bond offerings were drafted, reviewed, and approved outside the United States, and both offerings were governed by English law. For Section 10(b) to apply to a transaction, that transaction must, at the very least, involve the transfer of title "within the United States" or parties that "incur[] irrevocable liability [to buy or sell the security] within the United States." *Absolute Activist Value Master Fund Ltd.* v. *Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012). Here, in both the 2021 and 2024 bond offerings, Indian issuers sold bonds outside the United States to initial purchasers, which were all non-U.S. banks. To the extent that the initial purchasers eventually sold some of the notes to U.S. QIBs in secondary transactions, the non-U.S. issuers were not a party to any of those transactions. Moreover, even if a domestic transaction occurred (it did not), the alleged conduct was nevertheless "so predominantly foreign as to be impermissibly extraterritorial." *Parkcentral Glob. Hub Ltd.* v. *Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014).

*Second*, under settled Second Circuit law, none of the challenged statements is legally actionable because statements regarding Adani Green's compliance efforts and anti-bribery and anti-corruption policies were puffery. In Adani Green's annual reports,

The Honorable Nicholas G. Garaufis                                                    -5-

the 2021 and 2024 Offering Circulars, the 2021 and 2023 Facility Agreements, and other public disclosures, Adani Green described the company's aspirations to implement strong internal risk management procedures and touted its anti-bribery and anti-corruption policies. It is hornbook law that such generic statements, which contain no concrete benchmarks or measurable standards, are "too general to cause a reasonable investor to rely upon them." *Singh* v. *Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (internal quotation marks and citation omitted).[3] The Indictment also asserts that Adani Green's vague "assurances" about its anti-bribery practices in its offering circulars and annual reports were "false and misleading." Ind. ¶¶ 93, 111. But the Second Circuit has made clear that reasonable investors do not interpret such cautionary language "as representations of satisfactory compliance," since it "suggests caution (rather than confidence)." *Singh*, 918 F.3d at 63-64; *see also Bos. Ret. Sys.* v. *Telefonaktiebolaget LM Ericsson*, 2024 WL 4023842, at *4 (2d Cir. Sep. 3, 2024) (explaining that generalized statements about ethics and compliance contain "no such specificity that would transform any of [these] generalized statements from mere puffery to an actionable material misrepresentation" and that an explicit warning that the company "may fail to comply with [its] corporate governance standards" apprises investors of the risk of imperfect compliance).

   *Third*, the Indictment fails to point to sufficient involvement in the alleged misstatements on the part of any of the Adani DOJ Defendants for Rule 10b-5 liability to attach under *Janus Capital Group* v. *First Derivative Traders*, 564 U.S. 135, 141 (2011).

---

[3]  *See also Plumbers & Steamfitters Loc. 773 Pension Fund* v. *Danske Bank A/S*, 11 F.4th 90, 103 (2d Cir. 2021) (stating that "[g]eneral declarations about the importance of acting lawfully and with integrity" cannot form the basis of a securities fraud claim) (citation omitted); *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 170 (2d Cir. 2021) (explaining that "[v]ague positive statements regarding a corporate entity's risk management strategy . . . are precisely the type of puffery that this and other circuits have consistently held to be inactionable") (citation and internal quotation marks omitted); *City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) ("It is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning that they are 'too general to cause a reasonable investor to rely upon them.'") (citation omitted); *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 205-06 (2d Cir. 2009) (finding that the statement "[we] set the standard for integrity" was puffery) (internal quotation marks omitted); *In re Liberty Tax, Inc. Sec. Litig.*, 435 F. Supp. 3d 457, 468 (E.D.N.Y. 2020) (Garaufis, J.) (finding a simple, generic assertion about the success of a compliance task force is mere puffery), *aff'd*, 828 F. App'x 747 (2d Cir. 2020).

The Honorable Nicholas G. Garaufis                                        -6-

To be the maker of any given statement—as is necessary to sustain a Rule 10b-5 claim—one "must have *actually exercised* control over" the statement. *Colbert* v. *Rio Tinto PLC*, 2019 WL 10960490, at *6 (S.D.N.Y. July 29, 2019) (emphasis added) (quoting *Glickenhaus & Co.* v. *Household Int'l, Inc.*, 787 F.3d 408, 427 (7th Cir. 2015)) (internal quotation marks omitted). Gautam Adani did not "make" any challenged statement because there is no evidence that he reviewed, approved, or even was aware of such statements. As Chairman of a sprawling and diverse conglomerate of multiple businesses, Gautam Adani was far removed from subsidiaries' day-to-day efforts to raise capital, and there is no evidence that he exercised control over even one challenged statement. The Indictment fails to attribute any specific alleged misstatement to Sagar Adani and Vneet Jaain and does not describe any other relevant indicia of control over any alleged misstatement.

*Finally*, the DOJ would not be able to prove the alleged bribery in India that underpins all the charges. In meetings with the DOJ, counsel presented expert evidence from a former Chairperson of the Central Electricity Authority in India and Member of the Central Electricity Regulatory Commission, demonstrating that the allegedly illegal payments supposedly took place at or around the same time as documented, lawful, and transparent price reductions that Adani Green and Azure Power Global Ltd. ("Azure") indisputably provided to incentivize Indian state power companies to sign solar energy contracts. The expert report explained that those price reductions were ordinary, lawful concessions that Adani Green offered to Indian state government power agencies to incentivize them to finalize these energy deals. The primary evidence in the Indictment appears to have been gathered from Azure, Adani Green's competitor. But Azure is a troubled company, with a history of alleged misconduct and witnesses who have limited, if any, firsthand knowledge of material facts and are of dubious credibility.

Accordingly, the DOJ now acts within its considerable discretion in moving for dismissal.

The Honorable Nicholas G. Garaufis                                                    -7-

### 2.  Pending Consent Judgments in the SEC Action

As explained in their April 7, 2026 pre-motion conference letter, a copy of which is attached here, the Adani SEC Defendants believe that, for multiple, independent reasons, the Complaint fails as a matter of law.  On May 14, 2026, the SEC filed a consent motion requesting that this Court approve proposed Consent Judgments it had executed with each of the Adani SEC Defendants following extensive negotiations.  SEC Action, Dkt. 34; *see also* SEC Action Dkt. 34-1, Dkt. 34-2.  In those proposed Consent Judgments, Gautam Adani and Sagar Adani agreed to pay civil penalties of $6,000,000 and $12,000,000, respectively, and to be enjoined from certain future U.S. securities law violations, among other settlement commitments.  SEC Action, Dkt. 34 at 1.  On May 30, 2026, the SEC filed revised proposed Consent Judgments, which it modified to align with the SEC's recent rescission of Rule 202.5(e), which previously required defendants to agree not to publicly deny complaint allegations as a condition of settlement.  SEC Action, Dkt. 37.

District courts review proposed SEC consent judgments to confirm they are "fair and reasonable" and, where injunctive relief is sought, must ensure that the "public interest would not be disserved."  *SEC* v. *Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 294 (2d Cir. 2014) (citation and internal quotation marks omitted).  When evaluating a proposed consent judgment for fairness and reasonableness, a court assesses (1) the consent judgment's "basic legality," (2) whether the proposed terms and enforcement mechanisms are "clear," (3) whether the consent judgment resolves "the actual claims" at issue, and (4) whether there is a taint of "improper collusion or corruption."  *Id.* at 294-95 (citations omitted).  Because the court's "primary focus" is to "ensur[e] the consent decree is procedurally proper," it must "tak[e] care not to infringe on the S.E.C.'s discretionary authority to settle on a particular set of terms."  *Id.* at 295; *see also SEC* v. *Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 168 (2d Cir. 2012) ("We are bound in such matters to give deference to an executive agency's assessment of the public interest. . . .  This does not mean that a court must necessarily rubber stamp all arguments made by such an agency.  It does mean at least that a court should not reject the agency's assessment without substantial reason for doing so."); *SEC* v. *Caledonian Bank Ltd.*, 317 F.R.D. 358, 369, 374 (S.D.N.Y. 2016) (emphasizing courts' limited "circumscribed" discretion to deny consensual settlement agreements with the SEC) (citation omitted).

Here, the Consent Judgments clearly satisfy these factors because the proposed final judgments "are legal" and consistent with final judgments submitted and

The Honorable Nicholas G. Garaufis                                                    -8-

approved in hundreds of prior SEC actions; the "terms and enforcement mechanisms are clear"; those terms fully resolve the allegations in the Complaint; and they reflect arm's-length negotiations, as they arose from extensive dialogue, substantive engagement, and negotiations between the SEC staff and counsel for the Adani SEC Defendants.  SEC Action, Dkt. 34 at 2.  Nor do the respective injunctions "disserve the public interest," because they require the Adani SEC Defendants to comply with relevant U.S. securities laws.  *Id.*

\*   \*   \*

For the foregoing reasons, Defendants respectfully request that this Court grant the pending motion to dismiss the Indictment with prejudice and enter the proposed Consent Judgments in the SEC Action.  If the Court has questions about the pending resolutions of these cases, Defendants stand ready to respond to those questions in writing or at a hearing.[4]

Respectfully,

/s/ *Andrey Spektor*
Andrey Spektor
NORTON ROSE
FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY  10019
(212) 318-3000

*Counsel for Vneet S. Jaain*

/s/ *Timothy D. Sini*
Timothy D. Sini
NIXON PEABODY LLP
55 West 46th Street
New York, NY  10036
(212) 940-3000

*Counsel for Sagar R. Adani*

Robert J. Giuffra, Jr.
Nicolas Bourtin
Suhana S. Han
Andrew J. DeFilippis
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
(212) 558-4000

*Counsel for Gautam Adani*

---

[4]   To the extent that the Court wishes to schedule a hearing, Robert J. Giuffra, Jr., counsel for Gautam Adani, is lead counsel in an ICC arbitration outside the United States from June 25 to July 2.