# SULLIVAN & CROMWELL LLP



NIXON PEABODY

# Hecker Fink LLP

April 7, 2026

Via ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re: *SEC* v. *Adani et al.*, No. 24-cv-08080-NGG-JRC (E.D.N.Y.)

Dear Judge Garaufis:

On behalf of Defendants Gautam Adani and Sagar Adani, and pursuant to Rules IV(A)(2) and IV(A)(3) of Your Honor's Individual Rules, we write in connection with Defendants' upcoming motion to dismiss.

On November 20, 2024, Plaintiff Securities and Exchange Commission filed the Complaint (ECF No. 1) against Defendants, alleging securities fraud under the Securities Act of 1933 and Securities Exchange Act of 1934. On January 30, 2026, the parties stipulated to a schedule for Defendants' motion to dismiss, which the Court so-ordered on the same day. (ECF No. 25.) Defendants' motion to dismiss is due on April 30, 2026, the SEC's opposition is due no later than June 29, 2026, and Defendants' reply is due no later than August 13, 2026.

The allegations in the Complaint can be summarized briefly.[1] In September 2021, Adani Green, which is not a U.S. registrant, conducted a $750 million bond offering

---

[1] The defined terms "Adani Green," "Offering," "Notes" and "Subscription Agreement" have the same meaning as in the Complaint. (*See* Compl. ¶¶ 1, 3, 116.) The Complaint defines "Preliminary Offering Circular" together with "Final Offering Circular" as the "Offering Circulars," but also refers to a single "Offering Circular." (*See id.* ¶¶ 96, 98, 104.) For simplicity, we also refer to it as the "Offering Circular."

The Honorable Nicholas G. Garaufis                                                -2-

pursuant to SEC Rule 144A and SEC Regulation S, which are registration exemptions for private resales to qualified institutional buyers ("QIBs") and for non-U.S. sales, respectively. (Compl. ¶¶ 94 & n.2, 18, 33, 127.) Adani Green sold all of the Notes from the Offering outside the United States, via a Subscription Agreement, to non-U.S. underwriters, who later resold the Notes to QIBs. (*Id.* ¶ 116.) A fraction of those resales— in transactions to which Adani Green was *not* a party—are alleged to have been made to "investors in the United States." (*Id.* ¶ 127.)

The SEC claims that certain general ESG and anti-bribery statements in the Offering Circular and Subscription Agreement were materially false and misleading because Defendants failed to disclose an alleged scheme to bribe Indian state government officials in India. (*Id.* ¶¶ 89, 101-26.) Because the SEC could not charge Defendants under the Foreign Corrupt Practices Act, *see* 15 U.S.C. § 78dd-1(a), it instead recast its charges as a securities fraud case. Although not relevant to this motion, Defendants dispute that there is any credible evidence supporting the purported bribery scheme. Notably, the SEC does not allege that there were any investor losses, and there were none. The bonds have matured, and Adani Green repaid all principal and interest in full to investors in 2024.

For multiple, independent reasons, the SEC's Complaint fails as a matter of settled law.

## I.   MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

At the threshold, this Court should dismiss the claims against Defendants under Rule 12(b)(2) for lack of personal jurisdiction. As relevant here, the SEC must plead that Defendants had sufficient "minimum contacts" with the United States—that is, they "purposefully directed" their activities at the United States—and that the claims against them arose out of those activities. *Gucci Am., Inc.* v. *Weixing Li*, 768 F.3d 122, 136 (2d Cir. 2014) (internal quotation marks and citation omitted); *see also Fuld* v. *Palestine Liberation Org.*, 606 U.S. 1, 16 (2025) (holding that "a more flexible jurisdictional inquiry" applies under the Fifth Amendment). With respect to Gautam Adani, the Complaint does not come close. As Chairman of India's largest integrated infrastructure group, Gautam Adani was not involved in Adani Green's Offering. Fatally, the Complaint does not allege that Gautam Adani authorized the issuance of the bonds or otherwise personally directed *any* relevant conduct at the United States.

Instead, the Complaint impermissibly relies on Gautam Adani's position as Chairman of Adani Green and his membership on its Management Committee. (Compl.

The Honorable Nicholas G. Garaufis -3-

¶¶ 15, 30.)  But personal jurisdiction must be predicated on "his activities," not those of a company.  *Gucci*, 768 F.3d at 136 (internal quotation marks omitted).  As such, the alleged conduct of Adani Green's Management Committee, including that it "reviewed and approved" the Offering Circular (*see* Compl. ¶¶ 92-100), is not sufficient to establish personal jurisdiction over Gautam Adani.  *See SEC* v. *Sharef*, 924 F. Supp. 2d 539, 545 n.52 (S.D.N.Y. 2013) ("Jurisdiction over the representative of a corporation may not be predicated on jurisdiction over the corporation itself . . . .") (internal quotation marks and citation omitted).  In fact, Gautam Adani did not attend a single Management Committee meeting of Adani Green from 2020 to 2024 at which the Offering or any statement made in the Offering Circular was discussed or approved, and he did not otherwise approve the Offering or any statement made in the Offering Circular.

Similarly, the Complaint's general allegations (Compl. ¶¶ 16, 95, 112, 117) that Sagar Adani was authorized to take action with respect to the Offering documents, chaired certain Adani Green committees, and received drafts of the Subscription Agreement purport to show a connection to the challenged statements that is too attenuated to demonstrate purposeful availment of a U.S. forum.  The Complaint fails to tie Sagar Adani to a single allegedly false or misleading statement, much less one directed at U.S. investors.

## II.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Beyond not establishing personal jurisdiction over either Gautam or Sagar Adani, the Complaint fails to state a claim and must be dismissed under Rule 12(b)(6).

### A. The SEC's Claims Are Impermissibly Extraterritorial.

As the Supreme Court has made clear, Section 10(b) and Rule 10b-5 do not apply extraterritorially.  *Morrison* v. *Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 265 (2010).  Thus, to invoke Section 10(b), the SEC must plausibly allege a "domestic transaction[]" involving the Notes.  *Id.* at 267.  In the Second Circuit, the SEC must plead that "irrevocable liability was incurred or title was transferred within the United States."  *Absolute Activist Value Master Fund Ltd.* v. *Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012).  The SEC has not done so.  The Complaint claims that "Adani Green sold at least $175 million [in] Notes to investors in the United States."  (Compl. ¶ 127.)  But that allegation says nothing about where irrevocable liability was incurred.  The mere fact, taken as true, that some downstream investors were located "in the United States" is "irrelevant" to this inquiry.  *Loginovskaya* v. *Batratchenko*, 764 F.3d 266, 274 (2d Cir. 2014) (citation

The Honorable Nicholas G. Garaufis                                                    -4-

omitted).   Relatedly, the Complaint alleges that the Notes were "deposited with the Depository Trust Company ('DTC')[,]" and that "title to the Notes [was] registered in the name of Cede & Co. . . . as nominee for DTC . . . . in New York." (Compl. ¶ 129.)  Writing for the Second Circuit, Your Honor "reject[ed] [the] argument that a securities transaction is 'domestic' . . . if it settles through the DTC."  *In re Petrobras Sec.*, 862 F.3d 250, 272 n.24 (2d Cir. 2017).

Moreover, a domestic transaction alone "would not suffice" if, as the Complaint alleges, there is a "dominance of . . . foreign elements."  *Parkcentral Glob. Hub Ltd.* v. *Porsche Auto. Holdings SE*, 763 F.3d 198, 216-17 (2d Cir. 2014) (emphasis omitted).   The SEC's claims here solely involve Indian Defendants, an Indian issuer, securities not registered with the SEC and not traded on any U.S. exchange, and underlying conduct alleged to have occurred exclusively in India. (*See, e.g.*, Compl. ¶¶ 15-16, 18, 71, 94.[2])  Tellingly, the Complaint does not allege that the underwriters who purchased the Notes from Adani Green were U.S. institutions (they were not), or that the Subscription Agreement underlying the purchases was governed by U.S. law (it was not).  (*See id.* ¶ 116.)  This case is thus conclusively beyond the reach of the U.S. securities laws.  Indeed, we are aware of just one other litigated case brought by the SEC challenging a Rule 144A offering, which, unlike this one, involved a U.S. issuer and, in any event, ended with no finding of liability.[3]

### B.  None of the Alleged Misstatements Is Actionable.

The Complaint also challenges statements that the Second Circuit has repeatedly held are inactionable as a matter of law.  These include statements about Adani Green's ESG and anti-bribery commitments, reputation and competitive strengths, and risk factor disclosures acknowledging potential exposure to anti-corruption laws.  (*See* Compl. ¶¶ 104-05, 108-15.)   In this Circuit, it is "well-established" that aspirational, "general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery.'"  *City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173,

---

[2]      The alleged bribery scheme relates to a solar energy project in India for the provision of renewable power in India.  There is no allegation that any U.S. company bid on the project, or that any U.S. customer purchased energy in the project.  In fact, there was no such U.S. involvement.

[3]      *See SEC* v. *Volkswagen AG et al.*, No. 19-cv-01391 (N.D. Cal. 2019).

The Honorable Nicholas G. Garaufis                                                          -5-

183 (2d Cir. 2014) (citation omitted).  To be material, a statement "must be sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome."  *Id.* at 185.  That is especially true where, as in this case, the only U.S. purchasers of the Notes were a limited number of sophisticated QIBs, which must own and invest at least $100 million in securities.  Here, the general ESG-related statements—such as that "Adani Green's major objectives . . . included . . . 'to integrate Sustainability and ESG . . . aspects into [its] business'" and about adopting an "ESG Framework"—provided no such concrete, measurable benchmarks.  (*See* Compl. ¶¶ 108-10.)

The Second Circuit has repeatedly rejected similar statements as inactionable puffery.  *See In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 170 (2d Cir. 2021) ("Vague positive statements regarding . . . risk management strategy . . . are precisely the type of puffery that . . . [is] inactionable.") (internal quotation marks and citation omitted).  The same is true of the challenged statements about competitive strengths, such as that "[Adani Green] benefit[s] from the support, vision, resources and experience of Adani Group . . . [and its] strong track record of executing large-scale projects."  (Compl. ¶ 115.)  These vague claims are inactionable.  *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (finding reputational statements "so general that a reasonable investor would not depend on [them] as a guarantee that [the company] would never take a step that might adversely affect its reputation").

Similarly, the challenged risk factor disclosures, such as that Adani Green's "employees might take actions that could expose us to liability under anti-bribery laws," are inactionable.  (Compl. ¶ 104 (emphasis omitted).)  Indeed, those disclosures "expressly cautioned" that compliance measures could fall short and, therefore, could not have been misleading, let alone material.  *Bos. Ret. Sys.* v. *Telefonaktiebolaget LM Ericsson*, 2024 WL 4023842, at *3-4 (2d Cir. Sep. 3, 2024) (company's "generalized statements about ethics and compliance" not actionable because of their generality and cautionary language disclaiming "perfect compliance") (internal quotation marks and citation omitted).

### C. Defendants' Lack of Involvement in the Offering Bars the SEC's Claims Against Them.

Nor can the SEC show that Defendants were responsible for the challenged statements.  Under *Janus Capital Group* v. *First Derivative Traders*, 564 U.S. 135, 142 (2011), Defendants "must have *actually exercised* control over" a challenged statement in order for them to have "made" it and thus be held liable for such a statement.  *Colbert* v.

The Honorable Nicholas G. Garaufis                                        -6-

*Rio Tinto PLC*, 2019 WL 10960490, at *6 (S.D.N.Y. July 29, 2019) (emphasis added and citation omitted).  The Complaint contains no plausible allegation that Gautam Adani was involved in drafting, reviewing, or approving any document containing any alleged misstatement.  Indeed, the SEC does not allege that Gautam Adani even knew these statements were being made.  Although the Complaint alleges that the Adani Green Management Committee approved versions of the Offering Circular (*see* Compl. ¶¶ 96, 98, 100), the SEC fails to allege (because it cannot) that Gautam Adani attended the relevant meetings or approved the statements in the Offering Circular.  Because there are no allegations tying him to any alleged misstatement, the SEC's claims against Gautam Adani fail as a matter of law.  *See Noto* v. *22nd Century Grp., Inc.*, 35 F.4th 95, 104 (2d Cir. 2022) (affirming dismissal of civil securities claims on *Janus* grounds where "[t]he complaint d[id] not adequately allege that [the defendant] directly wrote the [challenged] articles, controlled what the authors put into the articles, or even saw them before their publication").  And any argument that he had "ultimate authority" over the statements by virtue of his position with Adani Green similarly fails.  *See Xu* v. *Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 362 (S.D.N.Y. 2022) (high-ranking position within a company does not, standing alone, confer maker status).

The allegations against Sagar Adani are also deficient.  Even if "multiple drafts" of the Offering Circular "were provided to [him]" (Compl. ¶ 117), these allegations do not tie him to specific misstatements, much less show that he had "ultimate authority" over their content, *Janus*, 564 U.S. at 142.

For similar reasons, the SEC fails to state a claim under Rule 10b-5(a) and (c)'s scheme liability provisions.  Under those provisions, Defendants must have "(1) committed a deceptive or manipulative act; (2) in furtherance of the alleged scheme to defraud; (3) with scienter."  *SEC* v. *Terraform Labs Pte. Ltd.*, 708 F. Supp. 3d 450, 478 (S.D.N.Y. 2023) (internal quotation marks and citation omitted).  In this Circuit, scheme liability requires the SEC to plead "something extra" beyond mere misstatements.  *SEC* v. *Rio Tinto plc*, 41 F.4th 47, 54 (2d Cir. 2022).  Here, the SEC relies merely on misstatements.  That fails.  As this Court explained in *Eden Alpha CI LLP* v. *Polished.com Inc.*, "where the core misconduct alleged is in fact a misstatement, it is improper to impose liability by designating the alleged fraud a manipulative device rather than a misstatement." 763 F. Supp. 3d 270, 317 (Garaufis, J.) (internal quotation marks and citation omitted and alteration accepted).

The Honorable Nicholas G. Garaufis                                    -7-


The SEC also fails to adequately plead that Defendants acted with the requisite intent.  Besides conclusory allegations (*see* Compl. ¶ 100), the SEC makes no plausible allegation that Defendants acted with knowledge or recklessness, *see SEC* v. *Hwang*, 692 F. Supp. 3d 362, 377 (S.D.N.Y. 2023), or aided and abetted any violation. Indeed, the SEC has not even sued the alleged primary violator, Adani Green.  And the SEC's negligence-based theories brought under Sections 17(a)(2) and (a)(3) fare no better. The SEC alleges no facts demonstrating that Defendants failed to use "the degree of care that a reasonably careful person would use under like circumstances" with respect to the Offering.  *SEC* v. *Laura*, 680 F. Supp. 3d 204, 231 (E.D.N.Y. 2023) (internal quotation marks and citation omitted).

*     *     *

For the foregoing reasons, Defendants will seek dismissal of the Complaint by April 30, 2026, and stand ready to attend a pre-motion conference if the Court wishes to schedule one.

Respectfully,


*/s/ Timothy D. Sini*

Timothy D. Sini
NIXON PEABODY LLP
55 West 46th Street
New York, NY  10036
(212) 940-3000


*/s/ Sean Hecker*

Sean Hecker
HECKER FINK LLP
350 Fifth Avenue
New York, NY  10118
(212) 763-0883


*Counsel for Sagar R. Adani*


Robert J. Giuffra, Jr.
Nicolas Bourtin
Suhana S. Han
James M. McDonald
Andrew J. DeFilippis
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
(212) 558-4000

*Counsel for Gautam Adani*