**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- against -<br><br>GAUTAM ADANI, ET AL.,<br><br>Defendants. | Case No. 1:24-cr-00433 (NGG) |

**DECLARATION OF ROBERT J. GIUFFRA, JR.**
**IN RESPONSE TO THE COURT'S JULY 8, 2026 ORDER**

I, Robert J. Giuffra, Jr., hereby declare as follows in connection with the Court's questions set forth in its July 8, 2026 Order and the related July 14, 2026 Affidavit of Gautam Adani:

**Background**

1.    I am the Co-Chair of Sullivan & Cromwell LLP (S&C).  In August 2025, S&C was retained to represent Gautam Adani in this criminal case, as well as the related SEC case, also pending in this Court.  I am submitting this declaration in order to provide additional context related to S&C's representation of Gautam Adani, and to explain why this Court should have no concerns whatsoever about granting the DOJ's motion to dismiss the Indictment here.

2.    In short, there is no basis for the Court to depart from its customary and narrowly-prescribed role in providing "leave" to dismiss an indictment under Federal Rule of Criminal Procedure 48(a).  That is because Defendants Gautam Adani, Sagar R. Adani, and Vneet S. Jaain (collectively, the "Adani Defendants") sought and received a decision that was

not affected by factors prejudicial to the defendants or clearly contrary to the public interest—the only two circumstances that courts have identified that would arguably support court intervention.  *See, e.g.*, *United States* v. *Salinas*, 693 F.2d 348, 351 (5th Cir. 1982) (protection of defendant); *United States* v. *Greater Blouse, Skirt & Neckwear Contractors Ass'n*, 228 F. Supp. 483, 486 (S.D.N.Y. 1964) (public interest).

3.      After being retained in these matters, S&C determined, based on our extensive review of the law and facts and our experience litigating many criminal and civil securities cases, that the cases brought by the DOJ and the SEC suffered from numerous fatal legal and factual deficiencies.  As explained in my June 24, 2026 letter to the Court, the Indictment (i) sought to punish wholly extraterritorial securities transactions through an unprecedented application of U.S. criminal laws; (ii) challenged various statements that were each nonactionable under well-settled Second Circuit precedent; (iii) incorrectly asserted that the Adani Defendants were "makers" of the challenged statements; and (iv) advanced factual theories of bribery that were implausible, internally inconsistent, and highly dependent on potential testimony that would lack credibility.

4.      At the time that the Indictment was unsealed, and contrary to the DOJ's typical practice in cases like this, the DOJ had not heard any substantive arguments from prior counsel for the Adani Defendants about the legal and factual merits of the charges.  As a result, from the start, our approach was to engage in an extensive and exhaustive analysis of the law and facts; to enlist the assistance of highly qualified experts concerning U.S. and Indian law; to identify and explain the Indictment's weaknesses to the DOJ; and to obtain a final decision on the merits that was based on the facts and the law relevant to this case.

**Our Advocacy**

5.      Our team spent many thousands of hours analyzing documents and information related to this case, conducting careful legal analysis of relevant and controlling caselaw, and engaging in extensive and substantive discussions and meetings with representatives of the DOJ, the SEC, and the Treasury Department's Office of Foreign Assets Control (OFAC) regarding the securities and loan-related allegations against the Adani Defendants and a separate economic sanctions-related investigation involving one of the Adani Group companies.

6.      In our meetings and calls with each of these agencies, which occurred over many hours, we sought to negotiate resolutions that would conclude all three pending matters. Nearly all of our discussions and advocacy focused on the extensive legal and factual analyses and written submissions that we and four highly-qualified experts had prepared, including our analysis of the numerous deficiencies we had identified in the DOJ's Indictment and SEC complaint.

7.      Specifically, we provided:  (i) a 118-page letter submission to the DOJ, accompanied by a nine-page cover letter; (ii) a 12-page supplemental submission; (iii) a 95-page slide deck presented in February 2026; and (iv) an additional 35-page slide deck presented in April 2026.[1]   Along with those submissions, we also provided the DOJ with expert reports from distinguished U.S. and Indian subject matter experts, who wrote and submitted another approximately 200 pages of expert reports in total.

8.      Those experts are:  (1) a securities law professor at Harvard Law School, who opined that the DOJ would not be able to prove that the generic statements challenged by the

---

[1]      We also provided to the DOJ a copy of a separate 151-page slide deck presented to the SEC in March 2026.

Government were material to the sophisticated qualified institutional buyers who purchased the bonds, and that the bond price reactions following the unveiling of the Government's allegations do not demonstrate that the alleged misstatements were material; (2) a former SEC Commissioner and Acting Chairman, who opined that, based on her experience and expertise, this case is unprecedented and programmatically misaligned with the U.S. regulatory priorities of the current Administration and most prior administrations in its focus on overwhelmingly foreign conduct and generic, immaterial statements; (3) a former Chief Justice for the Supreme Court of India, who opined on the robust anti-corruption and transparency regime in India and explained how Indian authorities are well equipped to investigate and address allegations of bribery in India; and (4) a former Chairperson of the Indian Central Electricity Authority and former ex-Officio Member of the Central Electricity Regulatory Commission, who described the renewable energy procurement regulatory processes in India, explained the transparent bidding process in this case, and explained that the Adani Defendants' references to financial "incentives" and "motivation" in their communications could refer to lawful energy price reductions that Adani Green indisputably offered, rather than to the supposed bribes as alleged by the Government.

9.      In total, the Adani Defendants submitted approximately 600 pages of law, facts, expert testimony, and argument to the DOJ in ten weeks, between February 3, 2026 and April 17, 2026.  On two occasions during our discussions with the DOJ, we stated that as part of any resolution of these matters on the merits, the Adani Group would be amenable to following through on a public statement by Gautam Adani regarding the Group's willingness to invest $10 billion in the United States as a means of promoting the U.S.-India trade relationship.  This statement regarding the Group's willingness to invest in the United States

was made in a social media post by Mr. Adani on November 13, 2024, prior to the unsealing of the Indictment in this case, which read in part: "As the partnership between India and the United States deepens, the Adani Group is committed to leveraging its global expertise and invest $10 billion in US energy security and resilient infrastructure projects, aiming to create up to 15,000 jobs." We referenced the Adani Group's willingness to invest to underscore that a collateral consequence of the pendency of these charges was the adverse impact on the Group's ability to invest in the United States and on the U.S.-India trade relationship.

10.    My firm and I have represented many major corporations and individuals in criminal cases before the DOJ. In seeking to revolve such cases, it is routine for defense counsel to advocate based on the collateral consequences of criminal proceedings on their clients, "including whether there is disproportionate harm to shareholders, pension holders, employees, and others not proven personally culpable, as well as impact on the public arising from the prosecution." U.S. Dep't of Just., Just. Manual § 9-28.300 (2018).

11.    The DOJ will often cite such collateral consequences in explaining a more lenient resolution, such as a deferred prosecution agreement. *See, e.g.*, Government's Memorandum in Support of the Deferred Prosecution Agreement at 9-10, *United States* v. *HSBC Bank USA, N.A.*, No. 1:12-cr-00763-AMD (E.D.N.Y. Jan. 30, 2013), Dkt. No. 14 ("The resolution of the government's investigation through this DPA . . . reflects a careful weighing of the factors that the government must consider in determining the appropriate disposition in cases involving wrongdoing by business entities: . . . collateral consequences, including whether there is a disproportionate harm to shareholders, pension holders, employees, and others not proven personally culpable, as well as the impact on the public arising from the prosecution . . . ."); Memorandum in Support of Deferred Prosecution Agreement at 8, *United*

*States* v. *WakeMed*, No. 5:12-cr-398-BO-1 (E.D.N.C. Jan. 31, 2013), Dkt. No. 13 ("[T]he Department of Justice regularly utilizes Non-Prosecution Agreements (NPAs) and Deferred Prosecution Agreements (DPAs) to deter, punish, and reform corporate behavior while limiting the collateral consequences to the innocent and the community resulting from a corporate conviction."); Deferred Prosecution Agreement at 4, *United States* v. *Teva Pharms. USA, Inc.*, No. 2:20-cr-00200-RBS-2 (E.D. Pa. Aug. 21, 2023), Dkt. No. 186 (citing the "substantial consequences" that a guilty plea would likely have for "the Company's customers and employees outside the federal health care programs"); Deferred Prosecution Agreement at 6, *United States* v. *Genzyme Corp.*, No. 8:15-cr-00352-JSM-AEP (M.D. Fla. Sept. 3, 2015), Dkt. No. 2-1 (citing as a relevant consideration the "potential collateral consequences of proceeding with a prosecution, which may cause undue harm to innocent individuals including current . . . employees and shareholders").

12. Ultimately, the DOJ advised us that it would not consider the Adani Group's willingness to invest in the United States as a part of any resolution. Specifically, in a May 11, 2026 email to me, Joseph Nocella (United States Attorney for the Eastern District of New York), copying Trent McCotter (Principal Associate Deputy Attorney General) and Tysen Duva (Assistant Attorney General, Criminal Division), advised that:

> [T]he portion of the joint defense offer made by Gautam Adani, represented by Sullivan & Cromwell, Sagar R. Adani, represented by Nixon Peabody LLP and Hecker Fink LLP, and Vneet S. Jaain, represented by Norton Rose Fulbright US LLP, to resolve the criminal charges against them by, in part, a general proposal to invest $10 billion in the United States is categorically rejected by this Office.
>
> We understand that other grounds for resolution of the pending criminal charges with the Department of Justice are being explored. However, please know that the above-referenced

proposal, which appeared in your April 17, 2026, slide deck presentation, will not be considered by this Office.

While we are aware of, and appreciate, your client's initiation of simultaneous resolutions of charges brought, or contemplated, by the SEC and the Treasury Department Office of Foreign Assets Control we would also like to clarify that resolutions of such charges are independent of the resolution of the pending criminal charges.

13.     Following the receipt of this email, we did not raise the subject of the proposed $10 billion investment with the DOJ again, and it was not incorporated in any way into, or made a condition of, the resolutions that we subsequently reached with the DOJ, SEC, and OFAC.

## The Resolutions

14.     As a result of our advocacy, on May 18, 2026, the DOJ filed the motion to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 48(a).  Criminal Dkt. 23.  Meanwhile, on May 14, 2026, the SEC filed proposed Consent Judgments with Gautam Adani and Sagar Adani.  *See* Civil Dkt. 34.  In those proposed Consent Judgments, Gautam Adani and Sagar Adani agreed to pay civil penalties of $6,000,000 and $12,000,000, respectively, and to be enjoined from certain future U.S. securities law violations, among other settlement commitments.  *Id.* at 1.  On May 30, 2026, the SEC filed revised proposed Consent Judgments, which it modified to align with the SEC's recent rescission of Rule 202.5(e), which previously required defendants to agree not to publicly deny complaint allegations as a condition of settlement.  Civil Dkt. 37.

15.     Also on May 18, 2026, Adani Enterprises Limited (AEL) agreed with OFAC to settle for $275 million its potential civil liability related to apparent violations of OFAC's Iran sanctions.     OFAC,     Settlement     Agreement     at     4     (May     18,     2026), https://ofac.treasury.gov/media/935636/download?inline.   The Settlement Agreement stated that "AEL extensively cooperated with OFAC's investigation, including by proactively disclosing the findings of its investigation, producing large volumes of documentation, meaningfully answering all the agency's questions, and promptly resolving its potential liability." *Id.* AEL produced almost 30,000 pages to OFAC.

16.     At no time did I discuss the resolution of this criminal case with any officer, employee, or representative of the U.S. Government other than those working for the DOJ, SEC, and OFAC on the criminal case, the SEC case, and the OFAC investigation.  Except as stated herein, I am not aware of anything promised, offered, sought, received, agreed to, or accepted, by anyone, in connection with the dismissal of the Indictment in this action.  I am also not aware of any agreement involving any person or entity exchanging anything for the dismissal of the Indictment.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 14, 2026 in New York, New York.

_____
Robert J. Giuffra, Jr.