# 26-XXXX

*To Be Argued By:*
JARED M. BEIM

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**DOCKET NO. 26-xxxx**

---

**IN RE UNITED STATES OF AMERICA,**

***Petitioner*.**

---

PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK
NO. 1:24-CR-433 (NGG)
THE HONORABLE NICHOLAS G. GARAUFIS

---

**PETITION FOR THE UNITED STATES OF AMERICA**

---

R. TRENT MCCOTTER
Acting Deputy Attorney General
JARED M. BEIM
Senior Counsel
United States Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
trent.mccotter@usdoj.gov
202-514-2105

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

PRELIMINARY STATEMENT .......... 1

RELIEF SOUGHT .......... 3

STATEMENT OF THE ISSUE .......... 3

BACKGROUND .......... 3

A. The grand jury returned a five-count indictment against eight foreign defendants. .......... 3

B. The Department of Justice adopted changes to its FCPA enforcement policy pursuant to an executive order. .......... 5

C. With defendants' consent, the government moved to dismiss the indictment with prejudice. .......... 6

D. The government executed a limited privilege waiver and provided detailed reasons for moving to dismiss the indictment. .......... 7

E. The district court found an insufficient factual basis to dismiss Counts One and Five. .......... 10

F. The district court refused to dismiss Counts One and Five even after the government swore to the accuracy of its submitted information. .......... 14

REASONS FOR GRANTING THE WRIT .......... 16

A. The government has a clear and indisputable right to dismissal of the remaining indictment counts. .......... 18

1. The Constitution commits the power to prosecute to the Executive rather than the Judiciary. .......... 18

2. Rule 48, read consistently with the Constitution, required dismissal of Counts One and Five because the motion to dismiss was unopposed. ....... 22

3. At minimum, Rule 48 required the district court to grant the motion to dismiss under the circumstances of this case...................................... 29

B. The government has no other adequate means to obtain relief from the court's order. ........................................... 34

C. Mandamus is appropriate under the circumstances of the case. ........................................................................ 35

CONCLUSION.......................................................................... 37

CERTIFICATE OF COMPLIANCE ....................................................... 38

CERTIFICATE OF SERVICE .............................................................. 39

ADDENDUM

# TABLE OF AUTHORITIES

## Cases

*Aetna Life Ins. Co. v. Haworth*,
300 U.S. 227 (1937) ........ 20

*Association of Am. Physicians & Surgeons v. Clinton*,
997 F.2d 898 (D.C. Cir. 1993) ........ 27

*Cheney v. United States Dist. Court*,
542 U.S. 367 (2004) ........ 17

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) ........ 21, 27

*Heckler v. Chaney*,
470 U.S. 821 (1985) ........ 27

*ICC v. Brotherhood of Locomotive Eng'rs*,
482 U.S. 270 (1987) ........ 19, 27

*In re Aiken County*,
725 F.3d 255 (D.C. Cir. 2013) ........ 18, 19, 27

*In re Richards*,
213 F.3d 773 (3d Cir. 2000) ........ 29

*In re United States*,
345 F.3d 450 (7th Cir. 2003) ........ 17, 24, 26, 29, 35

*In re United States*,
945 F.3d 616 (2d Cir. 2019) ........ 34, 35

*Kapoor v. DeMarco*,
132 F.4th 595 (2d Cir.), *cert. denied*, 146 S. Ct. 325 (2025) ........ 23

*Rinaldi v. United States*,
434 U.S. 22 (1977) ........ 8, 22, 26, 30

*Steffel v. Thompson*,
415 U.S. 452 (1974) .......... 20

*Trump v. United States*,
603 U.S. 593 (2024) .......... 18, 27

*United States v. Adams*,
777 F. Supp. 3d 185 (S.D.N.Y. 2025) .......... 25

*United States v. Ammidown*,
497 F.2d 615 (D.C. Cir. 1973) .......... 25, 26, 27, 33

*United States v. Armstrong*,
517 U.S. 456 (1996) .......... 26, 27

*United States v. Blaszczak*,
56 F.4th 230 (2d Cir. 2022) .......... 24, 28, 30, 31, 35

*United States v. Cowan*,
524 F.2d 504 (5th Cir. 1975) .......... 33

*United States v. Fokker Services B.V.*,
818 F.3d 733 (D.C. Cir. 2016) .......... 19, 20, 27, 28, 33

*United States v. HSBC Bank USA, N.A.*,
863 F.3d 125 (2d Cir. 2017) .......... 22, 23, 24, 25, 28, 29, 31, 35

*United States v. Huerta*,
878 F.2d 89 (2d Cir. 1989) .......... 18

*United States v. Martin*,
287 F.3d 609 (7th Cir. 2002) .......... 19

*United States v. Mercurris*,
192 F.3d 290 (2d Cir. 1999) .......... 20

*United States v. Nixon*,
418 U.S. 683 (1974) .......... 21, 27

*United States v. Pimentel*,
932 F.2d 1029 (2d Cir. 1991) .......... 35

*United States v. Smith*,
55 F.3d 157 (4th Cir. 1995) .......... 33

*Wayte v. United States*,
470 U.S. 598 (1985) .......... 19, 30, 33

**Statutes, Rules, and Constitutional Provisions**

U.S. Const. art. II, § 1, cl. 1 .......... 18

U.S. Const. art. II, § 2, cl. 1 .......... 18

U.S. Const. art. II, § 3 .......... 18

U.S. Const. art. III, § 2, cl. 1 .......... 19

18 U.S.C. § 3731 .......... 34

28 U.S.C. § 1651 .......... 17

Fed. R. App. P. 21 .......... 4

Fed. R. Crim. P. 48 .......... 1

**Other Authorities**

Exec. Order No. 14209, 90 Fed. Reg. 9587 (Feb. 10, 2025) .......... 5

Memorandum for Head of the Criminal Division from the Deputy Attorney General on Guidelines for Investigations and Enforcement of the Foreign Corrupt Practices Act (FCPA) (June 9, 2025) .......... 6

*Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101 (1984) .......... 21

*Response to Congressional Requests for Information Regarding Decisions Made Under the Independent Counsel Act*, 10 Op. O.L.C. 68 (1986) .......... 22

## PRELIMINARY STATEMENT

This case was indicted in 2024, but no defendant has ever appeared. Exercising its power under Article II of the Constitution, the Executive Branch decided not to prosecute this case further and thus moved to dismiss the pending charges with prejudice under Federal Rule of Criminal Procedure 48(a), which requires only "leave of court." The defendants consented to that relief.

Ordinarily, that would be the end of the matter. Given that the Executive's prosecutorial power arises from the Constitution, only another provision of the Constitution could limit it—*e.g.*, a defendant's due process rights—but here all defendants readily consented, and thus there could be no countervailing constitutional interest. In such cases, courts lack discretion to force the government to proceed on charges it does not wish to pursue, nor can the courts demand that the government waive applicable privileges and disclose its confidential decisionmaking to justify dismissal.

Over a period of months, however, the district court in this case has repeatedly disregarded those limitations. At the outset, it refused to grant the Rule 48(a) motion unless the government provided detailed reasons the court deemed sufficient to justify dismissal. Although the government was under no obligation to provide this privileged information, it nonetheless did so: it explained, in a lengthy filing, that a senior Justice Department official—after

consulting with colleagues across the Department—determined that the prosecution was not consistent with Department policy and presented factual, diplomatic, legal, and practical problems that warranted dismissal.

In a lengthy order, the district court agreed those were the actual, *bona fide* reasons for seeking dismissal—but then effectively appointed itself a super-prosecutor and proceeded to disagree with almost every single basis, even ones founded on prosecutorial discretion and concerns about international relations. The court ultimately, and very grudgingly, dismissed three charges—but refused to grant the Rule 48(a) motion as to five defendants and two counts, insisting that even more internal, confidential information was necessary. The court also peppered its order with unfounded attacks on the Department, which in truth had given extraordinary process to the determination to drop this case.

The government then repeatedly filed detailed explanations, including a sworn statement from the number-two-ranking official in the entire Department of Justice interpreting the Department's *own pre-existing prosecutorial priorities memorandum*—yet the district court proceeded to reject those bases, too.

As a result, after months of efforts by the government, the district court ultimately issued an order denying the motion to dismiss the remaining charges. The district court went so far as to suggest that the government would have to provide "expert reports" to justify an unopposed motion dismissing these

criminal charges. The government and the district court have profoundly different views on the nature of Rule 48 and the constitutional role of a district judge, leading to this impasse that can be resolved only by a higher court.

It appears that no appellate court has ever upheld a district court's refusal to grant a Rule 48(a) motion. This Court should not be the first. As other circuits have ruled in similar circumstances, mandamus is necessary to remedy the district court's dangerous and unconstitutional arrogation of executive power.

## RELIEF SOUGHT

The government respectfully requests that the Court swiftly issue a writ of mandamus directing the district court to grant the government's motion to dismiss the remaining counts of the indictment with prejudice.

## STATEMENT OF THE ISSUE

Whether the district court exceeded its authority under the Constitution and Federal Rule of Criminal Procedure 48(a) by denying the government's unopposed motion to dismiss with prejudice the indictment against five defendants.

## BACKGROUND

### A. The grand jury returned a five-count indictment against eight foreign defendants.

On October 24, 2024, a grand jury sitting in the Eastern District of New York returned an indictment against eight defendants, charging conspiracy to

violate the Foreign Corrupt Practices Act (FCPA) (Count One); securities-fraud conspiracy (Count Two); wire-fraud conspiracy (Count Three); securities fraud (Count Four); and conspiracy to obstruct justice (Count Five). Doc. 1.[1] The indictment charged three defendants (Gautam Adani, Sagar Adani, and Vneet Jaain) in Counts Two through Four, and charged the remaining defendants (Ranjit Gupta, Cyril Cabanes, Saurabh Agarwal, Deepak Malhotra, and Rupesh Agarwal) in Count One and (except for Gupta) Count Five. *Id.* at 42-51.

All defendants are foreign, and seven are Indian citizens. Doc. 1 at 3-5. The indictment alleged that the defendants engaged in schemes to bribe Indian government officials in order to secure solar-energy contracts with the Indian government; to conceal those bribes and misrepresent the anti-bribery practices of an Indian company "to obtain billions of dollars in financing for green energy projects"; and "to obstruct the United States government's investigation[]" of the bribery scheme. *Id.* at 1-2.

The indictment was unsealed at the government's request on November 20, 2024. Doc. 14. No defendant has been arrested or personally appeared in this case; all remain outside the United States. Doc. 37 at 7.

[1] "Doc." refers to documents on the district court docket. The relevant filings are included in the addendum.

**B. The Department of Justice adopted changes to its FCPA enforcement policy pursuant to an executive order.**

On February 10, 2025, President Trump issued an executive order directing the Attorney General to "review guidelines and polices governing investigations and enforcement actions under the FCPA"; "review in detail all existing FCPA investigations or enforcement actions and take appropriate action with respect to such matters to restore proper bounds on FCPA enforcement and preserve Presidential foreign policy prerogatives"; and "issue updated guidelines or polices, as appropriate, to adequately promote the President's Article II authority to conduct foreign affairs and prioritize American interests, American economic competitiveness with respect to other nations, and the efficient use of Federal law enforcement resources." Exec. Order No. 14209, § 2, 90 Fed. Reg. 9587 (Feb. 10, 2025).

Pursuant to that order, then-Deputy Attorney General Todd Blanche issued guidelines governing the investigation and prosecution of FCPA matters. *See* Memorandum for Head of the Criminal Division from the Deputy Attorney General on Guidelines for Investigations and Enforcement of the Foreign Corrupt Practices Act (FCPA) (June 9, 2025), available at <https://justice.gov/dag/media/1403031/dl>.

This "Blanche Memorandum" established four non-exhaustive factors that prosecutors must consider in deciding whether to pursue FCPA charges:

whether the alleged misconduct (1) was connected to the operations of a drug cartel or transnational criminal organization; (2) "deprived specific and identifiable U.S. entities of fair access to compete and/or resulted in economic injury to specific and identifiable American companies or individuals"; (3) "occur[ed] in sectors like defense, intelligence, or critical infrastructure" that are essential to U.S. national security interests; and (4) was serious and bore "strong indicia of corrupt intent tied to particular individuals." *Id.* at 2-4. Cases lacking those factors should be dismissed as inconsistent with Department priorities.

### C. With defendants' consent, the government moved to dismiss the indictment with prejudice.

After extensive deliberations consuming an extraordinary amount of time and resources, the government moved on May 18, 2026, to dismiss the indictment with prejudice, stating that "[t]he Department of Justice has reviewed this case and has decided, in its prosecutorial discretion, not to devote further resources to these criminal charges against individual defendants." Doc. 23 at 1. The motion noted that "[c]ounsel for all defendants consent to this relief." *Ibid.* The motion was signed by Principal Associate Deputy Attorney General (and now Acting Deputy Attorney General) R. Trent McCotter and United States Attorney Joseph Nocella, Jr. *Ibid.*

On June 26, 2026, the district court rejected that request as "terse, bland, and conclusory." Doc. 36 at 4. The court directed the government "to advise the

court of each reason for dismissing the Indictment … and to provide the court with sufficient factual support for each basis," *id.* at 5.

### D. The government executed a limited privilege waiver and provided detailed reasons for moving to dismiss the indictment.

In an extensive July 4, 2026 response to the court, McCotter explained why the government "typically files short dismissal motions" and why courts "typically accept [them] without controversy." Doc. 37 at 1-5 & n.2.

Among other reasons, he noted that providing a detailed explanation risks exposing privileged internal discussions by Department of Justice attorneys about whether a prosecution should proceed. *Id.* at 2-3. A requirement that the government provide detailed reasons for dismissal also risks drawing the court into a determination that is constitutionally entrusted to the Executive Branch—whether to prosecute a crime. *Id.* at 3-5. McCotter explained that the primary object of Rule 48(a)'s leave-of-court requirement "is 'to protect a defendant against prosecutorial harassment,'" *id.* at 3-4 (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam)), but where the dismissal "is both unopposed *and* with prejudice," "[n]o game is possibly being played," and a court's "ultra-narrow inquiry is further constricted," *id.* at 5.

Despite the constitutional concerns raised by the court's directive, McCotter granted a limited waiver of relevant privileges and explained why he had decided to dismiss the charges after conducting extensive meetings with

colleagues and defense counsel, amounting to well over one hundred hours of his own time spent reviewing the matter. Doc. 37 at 5, 10.

Several reasons applied across the board:

(1) this "is a foreign case," with the indictment referencing India hundreds of times and boiling down to allegations that Indians tried to bribe "other Indians … to get Indian contracts to provide electricity to Indians in India";

(2) India itself "investigated many of the allegations in this case" and "found no actionable misconduct";

(3) the securities-related conduct did not result in any loss to victims;

(4) the indictment was unsealed "in the final days of the prior Administration, apparently as a 'name and shame' designed to levy accusations without any realistic prospect of a trial ever occurring";

(5) trying the case would present "extraordinary proof problems … because significant evidence and key witnesses are in India"; and

(6) the defendants are "all foreign nationals" who "have never appeared [in the case] and probably never would," because they "live abroad in locations that offer no reasonable prospect of arrest." *Id.* at 6-7 (emphases removed). The letter stated that any one of those bases was sufficient for dismissal. *Id.* at 7.

McCotter also provided charge-specific reasons for dismissal. Doc. 37 at 7-9. He determined that the fraud charges (Counts Two through Four) "should

never have been brought," as "[t]hey are failed FCPA claims (which could not be brought against these three particular defendants on these facts) that were spun into securities charges." *Id.* at 7. Binding caselaw likely forbade prosecution because of the extensively foreign nature of the case, and the underlying legal theory of fraud—that financing documents contained allegedly false or misleading statements about the Indian renewable energy company's involvement in bribery and commitment to anticorruption principles, *see* Doc. 1 at 26—was "so broad that it arguably turns any undisclosed corporate misconduct into criminal securities fraud." Doc. 37 at 7-8. McCotter also noted, *inter alia*, that a parallel civil enforcement action had settled, and because "there were no victims who suffered any losses, the resolution of that civil case made it even more obvious that there was no point in pursuing criminal securities charges for the same conduct." *Ibid.*

McCotter further determined that the FCPA count (Count One) should be dismissed because it did not satisfy the Blanche Memorandum. Doc. 37 at 8-9. The charged conduct "did not involve criminal organizations, did not have any effect on U.S. companies, did not in any way implicate national security, was not egregious, and has been the subject of investigations in India"; "no … interests" of the United States were "implicated." *Id.* at 9. McCotter determined that, "[u]nder the Blanche Memorandum, the FCPA charges should have been

dismissed a year ago"; in any event, it was "entirely unclear that the prosecution could prove that the alleged payments in this case were not legitimate commercial transactions." *Ibid.* He further explained that Count Five was a "tagalong obstruction charge[]" that was based in part on a dubious theory—hiring "extremely expensive law firms to conduct thorough investigations that implicated the most high-profile defendants while downplaying the role of lower-profile individuals." *Ibid*; *see* Doc. 1 at 24-25.

Finally, McCotter's response addressed unsubstantiated media reports that suggested the government had "sought dismissal of the securities charges at least in part because of some promise by those defendants to invest money in the United States." Doc. 37 at 9. McCotter explained that this suggestion was categorically "false," and that he "had already firmly concluded [he] would seek dismissal of the securities charges no matter what, because they were indefensible." *Ibid.*

### E. The district court found an insufficient factual basis to dismiss Counts One and Five.

1. On August 10, 2026, the district court issued a lengthy order. It grudgingly dismissed Counts Two through Four of the indictment (the fraud-related charges against three defendants), but reserved judgment as to Counts One and Five (the FCPA and obstruction charges against the remaining

defendants) and directed the government to further justify dismissing those charges. Doc. 49.

a. The court first agreed that McCotter had been the sole decisionmaker; that the reasons he provided to the court were "the real reasons for his decision to dismiss the Indictment"; and that a defendant's purported promise of a $10 billion investment in the United States had never been a consideration in that decision. Doc. 49 at 22. Nevertheless, the court stated that it needed "to determine for each reason (a) whether the government has provided 'sufficient factual information,' and if so, (b) whether that particular reason is 'substantial.'" *Ibid.*

b. Conducting an independent assessment of the grounds provided, the court one-by-one disagreed with almost every single basis provided by the government, characterizing them as "unsupported conclusory statement[s]" and "unsubstantiated." Doc. 49 at 23-30. As to this being an overwhelmingly "foreign" case that squarely implicated significant legal and policy problems, the court noted that there were some mentions of the United States in the indictment—and thus maybe the case was not foreign. The court also was "unpersuaded" by the Executive Branch's "concerns of 'diplomatic strife' and 'waste[d] resources'" if the case proceeded. *Id.* at 24.

As to numerous potential proof issues that had been detailed, the court faulted McCotter for allegedly "offer[ing] the court no way to evaluate the extent or veracity of his assertions." *Id.* at 29. As to the defendants' foreign status, the court minimized the fact that they were (and likely would remain) outside the jurisdiction of the United States, claiming there was "no information" in the "record" about their whereabouts. *Id.* at 30; *see also id.* at 25-29.

c. After rejecting every other basis for dismissal, the district court agreed that one charge-specific reason provided for Counts Two through Four—that the alleged misrepresentations concerning the Indian renewable energy company's commitment to, and policies on, anticorruption "appear to be so broad as to qualify as inactionable puffery"—justified dismissal. Doc. 49 at 34-37, 44, 46.

d. The court, however, declined to dismiss Count One because it found, without evidence, that "the current record contradicts McCotter's reasoning." Doc. 49 at 37-42. The court expressly agreed that the indictment did not allege conduct connected to a drug cartel or transnational criminal organization, *id.* at 38-39, but still refused to dismiss the charge. In the court's view, the charged conduct possibly related to other Blanche Memorandum factors, wildly speculating that maybe there had been disadvantaged U.S.

companies, *id.* at 39, or perhaps there was "an urgent threat[] to U.S. national security," *id.* at 39-40, or maybe there had been severe corruption, *id.* at 40-41.

The court also noted that the government had not moved to dismiss the FCPA charge within the 180-day review period set by Executive Order 14209, speculating without evidence that this suggested something nefarious. Doc. 49 at 41-42.

e. The district court also refused to dismiss Count Five. Doc. 49 at 42-44. The court disagreed with the proffered weaknesses and instead insisted that McCotter's alleged "failure to address … serious allegations of the obstruction conspiracy"—pertaining to false statements allegedly made to "the FBI, the Department, and the SEC" in the United States—was "insufficient to meet Rule 48(a)'s procedural requirements and at worst misleading." *Id.* at 43.

f. The district court then expressed "concern[]" over imaginary "irregularities in the decision to dismiss the Indictment"; speculated that McCotter "eschewed the professional opinions of innumerable officials from various federal offices and replaced them with his singular judgment," possibly "in collaboration with defense counsel"; and found that the government's supposed "refusal" to satisfy Rule 48(a)'s alleged "procedural requirements … evince[d] a lack of respect for the Judiciary as a co-equal branch." Doc. 49 at 45. The court's statements were all false.

The court directed the government to (again) "advise [it] of each reason for dismissing" those counts and "to provide … sufficient factual support for each reason." Doc. 49 at 46.

**F. The district court refused to dismiss Counts One and Five even after the government swore to the accuracy of its submitted information.**

1. In response to the district court's demand for even more information, McCotter (who was by then serving as the Acting Deputy Attorney General) filed a letter correcting the record regarding the district court's "factual misimpression" that he had rejected "the professional opinions of others," noting that he had "consulted at length with attorneys in the Department" and that his dismissal decision "reflected the input and advice [he] received from them." Doc. 50 at 1. McCotter also explained, *inter alia*, that his "discussions with defense counsel were the sort of presentations and arguments that defense counsel regularly make to members of the Department when advocating for their clients," and that those presentations had been attended by other Department of Justice attorneys, including from the U.S. Attorney's Office and the Criminal Division. *Ibid.*

McCotter then urged the district court to reconsider its decision on Counts One and Five. Doc. 50 at 2. He rebutted the court's critique of his application of the Blanche Memorandum, which, he explained, is "an expression of a policy that the Department is tasked with carrying out," rather than "a law or

regulation to be interpreted by a court." *Id.* at 2-3. McCotter also explained that his evaluation of the evidence supporting the obstruction count raised "significant doubts" that the government could prove guilt beyond a reasonable doubt—"particularly with respect to intent" given the likelihood the defendants would assert an advice-of-counsel defense. *Id.* at 3.

2. In a terse August 12, 2026 text order, the court stated that the government's latest letter failed to provide "'factual support'" for each reason offered for dismissing Counts One and Five.

3. On August 14, 2026, to assuage the district court's prior concern that McCotter's explanations were unsworn, he provided a sworn statement confirming that his previous submissions provided "fact-based reasons" for dismissal and noting that, "[i]n particular, with respect to considerations of policy priorities, resources, and prosecutorial discretion, the statements of the actual decisionmaker provide any necessary evidentiary basis in full." Doc. 56 at 1.

McCotter further explained that the basis for dismissal of the FCPA charges rests on "a lack of evidence showing that the FCPA charges satisfied the Blanche Memorandum," and "it is precisely that lack of evidence that drove the decision to seek dismissal." Doc. 56 at 1. Because the government "cannot prove a negative," the district court's continued demand for "'factual support'" was an

impossible request—yet the government continued to try and satisfy these demands by submitting the August 14 statement under oath, signed by the number-two-ranking official in the entire Department of Justice. *Id.* at 2.

4. Despite all of this, the district court denied the government's Rule 48(a) motion as to Counts One and Five, largely based on the reasoning in its August 10 memorandum order. Doc. 57 at 1, 7-9. In the court's view, Rule 48(a) "necessitates" an extraordinary level of "judicial review" that "is meant to serve as a critical check on Executive power." *Id.* at 10. The court was apparently unaware that this "check" of Executive power meant the court was forcing the government to *keep prosecuting*.

The court maintained that it could not "ignore" what it believed to be "glaring insufficiencies in the record" of this case "or the apparent disconnect between the decision made and the facts given," even though it had previously held that the government's proffered reasons were indeed the real reasons for seeking dismissal. Doc. 57 at 13-14. The court went so far as to suggest that the government may have to submit "expert reports" if it wanted the court to dismiss the remaining criminal charges. *Id.* at 9-10 n.11.

**REASONS FOR GRANTING THE WRIT**

The All Writs Act empowers courts of appeals to issue writs of mandamus. 28 U.S.C. § 1651(a); *see Cheney v. United States Dist. Court*, 542 U.S.

367, 380 (2004). Circuit courts utilize mandamus to address district court refusals to dismiss charges at the government's request. *See In re United States*, 345 F.3d 450, 451-53 (7th Cir. 2003).

The district court's actions below are deeply destabilizing and corrosive to the Constitution. The judge effectively appointed himself as a super-prosecutor and super-ambassador who could reject the government's *bona fide* bases for dismissal—including under-oath statements by the second-ranking official at the Department of Justice about prosecutorial priorities and international relations. This is a severe encroachment on the Executive Branch's constitutional authority over criminal charging and prosecutorial decisions and violates both Federal Rule of Criminal Procedure 48(a) and the constitutional separation of powers. The district court wildly exceeded its authorities by arrogating to itself the core of executive power.

Meanwhile, five defendants remain in limbo, with criminal charges hanging over their heads, simply because of the district court's academic disagreements with the Department's considered decision not to proceed with this case.

Mandamus relief is clearly warranted.

### A. The government has a clear and indisputable right to dismissal of the remaining indictment counts.

Under Articles II and III of the Constitution, the power to prosecute belongs to the Executive, not the Judiciary. Read against that backdrop, Rule 48(a) and the Constitution required the district court to grant the government's unopposed motion to dismiss the indictment with prejudice. At minimum, it required the court to grant the motion under the circumstances of this case.

#### 1. The Constitution commits the power to prosecute to the Executive rather than the Judiciary.

a. Article II provides that "[t]he executive Power shall be vested in a President," U.S. Const. art. II, § 1, cl. 1; that the President "shall have Power to grant Reprieves and Pardons for Offences against the United States," § 2, cl. 1; and that the President "shall take Care that the Laws be faithfully executed," § 3. Taken together, those provisions vest the power to prosecute crimes in the Executive. *In re Aiken County*, 725 F.3d 255, 263 (D.C. Cir. 2013); *see also United States v. Huerta*, 878 F.2d 89, 92 (2d Cir. 1989). Thus, the Supreme Court has recognized that "the Executive Branch has 'exclusive authority and absolute discretion' to decide which crimes to investigate and prosecute." *Trump v. United States*, 603 U.S. 593, 620 (2024). This authority "embraces decisions about … whether to dismiss charges once brought." *United States v. Fokker Services B.V.*,

818 F.3d 733, 737 (D.C. Cir. 2016); *accord United States v. Martin*, 287 F.3d 609, 623 (7th Cir. 2002).

A "corollary" of "[t]he Executive's exclusive authority" is that "neither the Judicial nor Legislative Branches may directly interfere with the prosecutorial discretion of the Executive by directing the Executive Branch to prosecute particular individuals." *Aiken*, 725 F.3d at 263. Likewise, "the refusal to prosecute cannot be the subject of judicial review." *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987).

"Judicial supervision in this area … entails systemic costs of particular concern" given that the decision to pursue a prosecution turns on factors only a politically accountable branch can determine, like "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte v. United States*, 470 U.S. 598, 607-08 (1985). "The Presidential power of prosecutorial discretion is rooted in Article II." *Aiken*, 725 F.3d at 262. That includes the "indubitable" power to "direct that the criminal be prosecuted no further." *Id.* at 263.

b. Article III, meanwhile, nowhere provides federal judges with any prosecutorial or diplomatic powers. Federal courts may exercise only "judicial Power" over "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. A case

or controversy is a "dispute between parties who face each other in an adversary proceeding." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937). And "an actual controversy must be extant at all stages of review." *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974); *accord United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999). It follows that if the dispute between the parties comes to an end, the court's exercise of judicial power must end as well.

Accordingly, "settled constitutional understandings" provide that "authority over criminal charging decisions resides fundamentally with the Executive, *without the involvement of—and without oversight power in—the Judiciary*." *Fokker*, 818 F.3d at 741 (emphasis added). "[T]he Supreme Court has declined to construe Rule 48(a)'s 'leave of court' requirement to confer any substantial role for courts in the determination whether to dismiss charges," and accordingly a court cannot deny the government's motion to dismiss "based on a disagreement with the prosecution's exercise of charging authority" or with the prosecution's determination that further proceedings "would not serve the public interest." *Id.* at 742-43.

c. The district court below suggested that Rule 48(a) serves as a "sunshine" provision—but that approach is also contrary to the Constitution's protection of executive privilege. The Executive must be able to make decisions about prosecutorial resources without judicial inquisition and without those

reasons being revealed outside the Executive Branch. Executive privilege is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974). Although there is no "absolute, unqualified Presidential privilege" to prevent the disclosure of all privileged information, *id.* at 706, criminal charging and dismissal decisions fall in the heartland of information that the Executive Branch must be able to protect. The deliberative process component of executive privilege encompasses "advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated"—*i.e.*, opinions and statements often made in the course of bringing and dropping criminal prosecutions. *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

"[T]he valid need for protection" of such communications is "too plain to require further discussion." *Nixon*, 418 U.S. at 705. Forcing prosecutors to disclose their deliberative rationale could compromise other ongoing investigations or reveal sensitive information. "[T]he Executive's ability to enforce the law would be seriously impaired … if the Executive were forced to disclose sensitive information on case investigations and strategy from open enforcement files." *Prosecution for Contempt of Congress of an Executive Branch*

*Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 117-18 (1984).

The Executive Branch accordingly has an Article II right to avoid disclosing "unpublished details of allegations against particular individuals and details that would reveal confidential sources[] and investigative techniques and methods." *Response to Congressional Requests for Information Regarding Decisions Made Under the Independent Counsel Act*, 10 Op. O.L.C. 68, 77 (1986).

d. The only thing that could narrow the Executive Branch's constitutional authorities here would be a countervailing constitutional right of a defendant. But where a defendant consents to a Rule 48(a) motion, there is no such concern. To the contrary, as explained more below, actions like those of the district court here arguably *violate* the defendants' constitutional rights by improperly subjecting them to continued prosecution and a lengthy period of being held in limbo with charges hanging over their heads.

**2. Rule 48, read consistently with the Constitution, required dismissal of Counts One and Five because the motion to dismiss was unopposed.**

a. "The principal object of [Rule 48(a)'s] 'leave of court' requirement" is "to protect a defendant against prosecutorial harassment." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam); *accord United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 141 (2d Cir. 2017). If a prosecutor could dismiss cases

unilaterally, he could potentially infringe a defendant's due process rights by "charging, dismissing, and recharging … over the defendant's objection." *Rinaldi*, 434 U.S. at 29 n.15.

But that concern provides no basis for judicial intervention where a defendant consents to the dismissal—let alone, as here, where the government agrees to dismiss *with prejudice to refiling*. Thus, "leave of court" in such circumstances must be granted automatically under the Constitution. Reading Rule 48(a) to grant district courts a broader authority to override the Executive's prosecutorial decisions and to keep alive an otherwise moot controversy would directly violate Articles II and III—flouting the principle that courts should avoid adopting interpretations that raise constitutional concerns. *Kapoor v. DeMarco*, 132 F.4th 595, 607-08 (2d Cir.), *cert. denied*, 146 S. Ct. 325 (2025).

b. This Court has already concluded that a district court lacks such power in an analogous circumstance involving speedy trial. In *HSBC Bank USA*, the Court emphasized the Executive's "exclusive authority to decide whether to prosecute and to choose among alternative charges," and then held that "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." 863 F.3d at 138. The Court "decline[d] to interpret" the "vague

'approval' requirement" in the speedy-trial statute "to rejigger the historical allocation of authority between the courts and the Executive" by giving the district court "ongoing oversight power over the government's entry into or implementation of a DPA." *Ibid.*

Likewise, here, Rule 48(a)'s leave-of-court requirement should not be interpreted to authorize judicial inquiries into the Executive's privileged bases for dismissal, nor its constitutional authority over criminal prosecutions, including "whether to dismiss a proceeding once brought." *HSBC Bank USA*, 863 F.3d at 138. The purpose of Rule 48(a)'s requirement—protection against prosecutorial harassment—is fully satisfied when the district court confirms that the defendant consented to dismissal, and even more so when dismissal is with prejudice. *See also United States v. Blaszczak*, 56 F.4th 230, 237 (2d Cir. 2022) (granting government's request to remand cases for dismissal of eight counts of conviction given intervening Supreme Court precedent and "the prosecutorial discretion to which the Executive Branch of the government is entitled").

Other courts of appeals have reached similar conclusions. In *In re United States*, 345 F.3d 450 (2003), the Seventh Circuit granted the government's petition for a writ of mandamus directing dismissal of a criminal charge where the defendant had consented, explaining that Rule 48(a) empowers a court to

"protect a defendant from the government's harass[ment]"—but not to deny a motion to dismiss where "the defendant ha[s] agreed to it." *Id.* at 453.

And the D.C. Circuit ruled similarly in *Fokker*, which was cited approvingly in *HSBC Bank USA*, 863 F.3d at 137-38. In that case, the circuit court determined that Rule 48(a)'s "'leave of court' authority gives no power to … deny [dismissal] … based on a disagreement with the prosecution's exercise of charging authority," 818 F.3d at 742, or "to scrutinize and countermand the prosecution's exercise of its traditional authority over charging and enforcement decisions," *id.* at 743. The district court here, however, littered its orders with precisely that sort of prohibited scrutiny and disagreement.

c. Dicta in certain out-of-circuit cases have suggested a broader conception of a district court's power under Rule 48(a), but those views conflict with the Constitution and more-recent Supreme Court precedent.

The district court's aggressive interpretation of Rule 48(a) traces back to *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973). *See* Doc. 49 at 20-21 (citing *United States v. Adams*, 777 F. Supp. 3d 185, 207-08 (S.D.N.Y. 2025), which relies on *Ammidown*). *Ammidown* involved a plea under Rule 11 rather than a motion to dismiss under Rule 48(a); the court stated that, even "when the defendant concurs in the dismissal," a district court "will not be content with a mere conclusory statement by the prosecutor that dismissal is in the public

interest, but will require a statement of reasons and underlying factual basis." 497 F.2d at 620. The court further stated that the district court has "the role of guarding against abuse of prosecutorial discretion" and, to that end, should grant a motion to dismiss only if it is "satisfied that the reasons advanced for the proposed dismissal are substantial." *Ibid.*

Such statements are dicta. "We are unaware … of any appellate decision that actually upholds a denial of a motion to dismiss a charge on such a basis." *In re United States*, 345 F.3d at 453; *see Rinaldi*, 434 U.S. at 29 n.15 (finding it "unnecessary to decide" whether some lower courts have acted impermissibly in asserting the power to deny unopposed motions to dismiss when "clearly contrary to the public interest").

This Court should not follow such dicta here. "The Constitution does place judicially enforceable limits on the powers of the nonjudicial branches of the government—for example, the government may not make its prosecutorial decisions on racially discriminatory grounds—but they are the limits found in the Constitution and thus do not include 'bad faith' and 'against the public interest.'" *In re United States*, 345 F.3d at 453.

Nor do those judicially enforceable limits include a requirement even to provide a non-conclusory "statement of reasons." *Ammidown*, 497 F.2d at 620; *see* Doc. 49 at 20-21. To the contrary, any such requirement would—at least

absent "clear evidence" of an unconstitutional motive, *United States v. Armstrong*, 517 U.S. 456, 465 (1996)—contradict the principle that the Executive is entitled to "'confidentiality'" in its "'decisionmaking process.'" *Association of Am. Physicians & Surgeons v. Clinton*, 997 F.2d 898, 909 (D.C. Cir. 1993); *see Klamath Water Users Protective Ass'n*, 532 U.S. at 8-9 (discussing scope and purpose of deliberative-process privilege).

In addition, the dicta rest on an unsound premise: that when the Executive decides no longer to prosecute a case, district courts have freewheeling authority to prevent what they subjectively regard as "abuse" of prosecutorial discretion—by illogically insisting that t*he prosecution continue*. *Ammidown*, 497 F.2d at 620. Even where a judge disagrees with the reasons for dismissal, there is no judicial authority to question or prevent that dismissal. *Aiken*, 725 F.3d at 266.

The dicta also contradict recent decisions of the Supreme Court. Since *Ammidown*, the Supreme Court has explained:

- "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case," *Nixon*, 418 U.S. at 693; *accord Trump*, 603 U.S. at 620;
- "the decision of a prosecutor in the Executive Branch not to indict" is "the special province of the Executive Branch," *Heckler v. Chaney*, 470 U.S. 821, 832 (1985);

- "the refusal to prosecute cannot be the subject of judicial review," *Locomotive Eng'rs*, 482 U.S. at 283; and
- the exercise of "a prosecutor's discretion" involves "the performance of a core executive constitutional function," *Armstrong*, 517 U.S. at 464-65.

In light of those intervening decisions, the D.C. Circuit in *Fokker* read *Ammidown* to mean that "courts generally *lack* authority to second-guess the prosecution's constitutionally rooted exercise of charging discretion." 818 F.3d at 750 (emphasis added); *see also Blaszczak*, 56 F.4th at 238 ("The government may elect to eschew or discontinue prosecutions for any number of reasons. Rarely will the judiciary overrule the Executive Branch's exercise of these prosecutorial decisions.").

Applying those principles here is simple: the government moved to dismiss with prejudice, and the defendants consented—and thus the district court was constitutionally required to dismiss the charges. Anything less would infringe on the government's Article II authorities and privileges, and would also violate Article III by arrogating to district judges the core Executive function of weighing whether prosecutions should continue. For these reasons, this Court should grant mandamus and order the district court to dismiss the remaining charges immediately.

### 3. At minimum, Rule 48 required the district court to grant the motion to dismiss under the circumstances of this case.

a. Even if a district court could deny an unopposed motion to dismiss without violating the constitutional separation of powers, that power would exist only in the most unique of circumstances, which are not present here.

In *HSBC Bank USA*, this Court stated (in dicta) that "any authority a court might have to deny a Rule 48(a) motion would be limited to cases in which dismissal is clearly contrary to manifest public interest." 863 F.3d at 141. "Some courts of appeals that have elucidated this 'public interest' test," the Court noted, "have stressed how 'severely cabined' it is, 'equat[ing] a dismissal that is clearly contrary to the public interest with one in which the prosecutor appears motivated by bribery, animus toward the victim, or a desire to attend a social event rather than trial'—in other words, bad faith." *Ibid.* (quoting *In re Richards*, 213 F.3d 773, 787-88 (3d Cir. 2000)). If a prosecutor "accepts a bribe" or prefers "to go on vacation rather than conduct a trial," his actions would suggest that he "is acting alone rather than at the direction or with the approval of the Justice Department." *In re United States*, 345 F.3d at 454.

b. Even if the manifest-public-interest standard is applied here, it would clearly not justify the district court's decision. The government's Rule 48(a) motion and supporting submissions represent the authoritative position of the Executive Branch. They were filed by the number-two-ranking official at the

entire Department of Justice and provided a specific and detailed explanation of the Executive's decisionmaking.

The district court itself even concluded "that the reasons for dismissal" in McCotter's July 4, 2026 filing were "the real reasons for his decision to dismiss the Indictment." Doc. 49 at 22. That should have been the end of the matter even under the district court's professed test. Moreover, McCotter executed a limited privilege waiver to provide the district court with detailed reasons for his dismissal decision and, to allay the district court's prior stated concern that McCotter's factual explanation was unsworn, further swore that those reasons were accurate to the best of his knowledge. Doc. 37 at 1-6; Doc. 56.

Courts cannot second-guess the government's application of its own prosecutorial policies, as attested under oath by the second-in-command at the Department of Justice. Nor can the court appoint itself a super-ambassador and disagree with the Executive Branch's concerns of diplomatic strife, as the district court did here.

Furthermore, the reasons provided for dismissal were exactly the sort of considerations that guide prosecutorial decisions about whether to bring or dismiss charges, including the strength of the evidence and the government's enforcement priorities. *Wayte*, 470 U.S. at 607. A prosecutor's assessment of such factors are "particularly ill-suited to judicial review." *Ibid*; *see Rinaldi*, 434

U.S. at 31-32 (district court was required to grant a post-conviction Rule 48(a) motion that was based on the government's established charging policy); *Blaszczak*, 56 F.4th at 239-42 (discussing cases where government permissibly sought to terminate prosecution based on its enforcement policy, sufficiency-of-the-evidence concerns, or fairness considerations).

Consider the reasons for dismissal applicable to all five indictment counts. Doc. 37 at 6-7. Many concerned the foreign nature of this case: the alleged conduct mostly was committed by Indian citizens in India and concerned Indian contracts for the supply of electricity to Indians; India was aware of and investigated some of the allegations in the case; there were concerns of diplomatic strife where the United States attempts to be the world's police; the location of key evidence and witnesses in India would pose "extraordinary proof problems" at trial; and the likelihood defendants would ever be arrested and stand trial was small. *Ibid*. Another basis for dismissal was McCotter's reasonable determination that the November 2024 unsealing of the indictment, at a time when no defendant had been apprehended and all defendants remained outside the United States, risked political complications. Doc. 37 at 6.

None of these reasons provides a hint of the "bad faith" associated with a dismissal that would be clearly contrary to a manifest public interest. *HSBC Bank USA*, 863 F.3d at 141. These factors were appropriate charging considerations—

precisely the things that the judiciary lacks authority and expertise on, which is why they are committed to the Executive Branch. But the district court appointed itself super-prosecutor and super-ambassador, and then voiced its disagreement with every single one of those bases.

Similarly, McCotter properly exercised Article II authority in determining that the enforcement priorities implemented by the Blanche Memorandum did not justify proceeding with the prosecution of the FCPA charge. Doc. 37 at 8-9; Doc. 50 at 2; *see, e.g.*, *Blaszczak*, 56 F.4th at 238-39 (discussing courts' approval of Justice Department decisions pursuant to broad policy changes).

The district court seriously erred by rejecting the government's application of its own prosecutorial priorities memorandum, Doc. 49 at 38-41, which "is an expression of a policy" that "sets forth the rubric for evaluating where prosecutors should prioritize their resources," and thus is entrusted to the Executive to interpret. Doc. 50 at 2. Again, the court did not question the legitimacy of McCotter's determination that the Blanche Memorandum supports dismissal, Doc. 49 at 22, nor did it dispute that the alleged conduct involves no drug cartel or transnational criminal organization, *id.* at 38-39. McCotter reasonably explained how he applied the remaining factors, but the district court again voiced personal disagreement and refused to accept the #2-ranking-official's application of the Department's own memo. Doc. 50 at 2-3.

It was the Executive's constitutional prerogative to evaluate and weigh those factors in its exercise of prosecutorial discretion. No rule of procedure could possibly authorize a district court to dispute those bases. District judges cannot appoint themselves prosecutors who get to veto the Department's own decisions.

The government's specific reason for dismissal of Count Five was likewise not contrary to a manifest public interest. McCotter concluded that "the Government's interest in prosecuting" an obstruction offense is diminished when the underlying crime is not prosecuted. Doc. 50 at 3. And his evaluation of the strength of the case "raised significant doubts" that the government could prove the obstruction offense beyond a reasonable doubt, *ibid.*, an assessment prosecutors routinely make—and are entitled to make—in the exercise of their charging discretion. *Wayte*, 470 U.S. at 607; *see United States v. Smith*, 55 F.3d 157, 160 (4th Cir. 1995) (reversing denial of Rule 48(a) motion based on doubts regarding evidence).

Simply put, the district court had no authority to reject the Executive's conclusion that the foregoing reasons justify dismissing Counts One and Five. Even if the court was entitled under the Constitution to probe the government's decisionmaking—which, as explained, it was not—the repeated, detailed explanations provided were far more than "a mere conclusory statement,"

*Ammidown*, 497 F.2d at 620, and amply satisfied any procedural requirements for the unopposed dismissal of a criminal case, *see, e.g.*, *United States v. Cowan*, 524 F.2d 504, 514 (5th Cir. 1975) (rejecting district court's finding that government's representations supporting dismissal were "merely conclusory").

Because this case involves "the prosecution's constitutionally rooted exercise of charging discretion," it was a "'usurpation'" of constitutional power for a judge to second-guess it. *Fokker*, 818 F.3d at 750. The district judge's actions here are severely corrosive to the Constitution's structure. He is not politically accountable. Yet he is forcing the prosecution of criminal defendants against all parties' wishes. It is an extraordinary action and deserves extraordinary relief.

**B. The government has no other adequate means to obtain relief from the court's order.**

Absent a writ of mandamus, the government has no adequate means to obtain relief from the order denying dismissal of Counts One and Five.

Over the course of months, the government provided all the information it can—and far more than what is legally required—to explain the basis for its dismissal decision and to satisfy the district court's unfounded concerns. *See* Docs. 37, 50, 56. Despite that extraordinary effort, the court persistently rejected the government's reasons as insufficient. By the end of its journey, the district court reached a point of near-absurdity, suggesting the government may have to provide "expert reports" simply to obtain dismissal of pending charges. Doc. 57

at 9-10 n.11. The district court may think it is punishing the government, but defendants' lives are on hold while this extraordinary behavior continues.

A writ of mandamus is necessary to reverse that encroachment on Article II. The government cannot challenge the court's refusal to dismiss Counts One and Five in an interlocutory appeal under 18 U.S.C. § 3731. Nor does an appeal after judgment provide a viable or adequate remedy: the district court cannot force the Executive to prosecute a case against its will; even if it could, this case likely will never reach final judgment because the defendants remain outside the United States; and even if there were a trial, the government has explained that an acquittal is likely, which would foreclose any possibility of appeal. *See In re United States*, 945 F.3d 616, 624 (2d Cir. 2019) ("Our precedents make it abundantly clear … that the government's limited right of appeal in criminal cases is relevant to the mandamus inquiry.").

No adequate alternatives to mandamus exist, which is why circuit courts routinely utilize mandamus to address district court refusals to dismiss charges. *See In re United States*, 345 F.3d at 451-53.

**C. Mandamus is appropriate under the circumstances of the case.**

Finally, mandamus relief is appropriate because the district court's denial of the unopposed motion to dismiss with prejudice "presents a novel and significant question of law," *In re United States*, 945 F.3d at 628, that squarely

implicates the Executive's constitutional authority over criminal charging decisions. Deciding the present challenge will also "aid in the administration of justice," *ibid.*, as this Court has addressed the boundaries of a district court's Rule 48(a) authority only in dictum, *United States v. Pimentel*, 932 F.2d 1029, 1033 n.5 (2d Cir. 1991), or without defining them, *HSBC Bank USA*, 863 F.3d at 140-41.

## CONCLUSION

The government requests that the Court promptly issue a writ of mandamus directing the district court to immediately dismiss with prejudice the remaining counts. Every minute these charges remain, the district court's arrogation of political power works a significant harm of constitutional dimension on the government and the criminal defendants.

Respectfully submitted,

s/ R. Trent McCotter

R. TRENT MCCOTTER
Acting Deputy Attorney General
JARED M. BEIM
Senior Counsel
United States Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
trent.mccotter@usdoj.gov
202-514-2105

## CERTIFICATE OF COMPLIANCE

1. This Petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because it contains 7795 words, excluding the cover page, Table of Contents, Table of Authorities, and Certificates.

2. This Petition has been prepared in proportionally spaced typeface using Microsoft Word in Calisto MT 14-point type.

s/ R. Trent McCotter

## CERTIFICATE OF SERVICE

I hereby certify that, on September 28, 2026, I electronically filed the foregoing Petition for the United States with the United States Court of Appeals for the Second Circuit using the CM/ECF system. In addition, a copy was served by U.S. Postal Service and by electronic mail (on counsel), as follows:

The Hon. Nicholas G. Garaufis
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Room 1426 S
Brooklyn, NY 11201

*Counsel for Saurabh Agarwal:*
Winston M. Paes
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
wmpaes@debevoise.com

*Counsel for Cyril Cabanes:*
Stephen A. Best
Brown Rudnick LLP
1900 N Street, NW, 4th Floor
Washington, DC 20036
sbest@brownrudnick.com

*Counsel for Rupesh Agarwal:*
Andrew Adams
Steptoe LLP
1114 Avenue of the Americas
New York, NY 10036
acadams@steptoe.com

*Counsel for Deepak Malhotra:*
Michael Kendall
White & Case LLP
75 State Street
Boston, MA 02109
michael.kendall@whitecase.com

*Counsel for Ranjit Gupta:*
Paul H. Schoeman
Herbert Smith Freehills Kramer (US) LLP
1177 Avenue of the Americas
New York, NY 10036
paul.schoeman@hsfkramer.com

DATED: SEPTEMBER 28, 2026

s/ R. Trent McCotter